FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 JAN 16 PM 3: 48

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE ESTATE OF JOSEPH M. COSTELLO, III BY ASHTON HARDY AS EXECUTOR, | ) ) ) ) | DOCKET NO. 00-349 |
| Plaintiff | ) ) | DIVISION / SECTION: J-4 |
| vs. | ) ) | JUDGE: BARBIER |
| RELIANCE INSURANCE COMPANY, | ) ) | MAGISTRATE: ROBY |
| Defendant | ) ) | |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COMES Defendant, Reliance Insurance Company, and upon suggesting to this Honorable Court that with respect to Plaintiff's *extra-contractual* claims, that there is no genuine dispute of material fact concerning whether Reliance has a legitimate basis for resisting this claim, and as such, Reliance is entitled to a judgment as a matter of law dismissing all *extra-contractual* claims against it pursuant to this motion, leaving to remain for trial only the breach of contract action.

WHEREFORE, Reliance prays that after due proceedings are had, that this Honorable Court will enter an Order dismissing all of the Plaintiff's extra-contractual claims, leaving for trial only the breach of contract action.

Respectfully submitted,

NIELSEN LAW FIRM

Gerald J. Nielsen, T.A., La.S.B. #17078
William R. DeJean, La.S.B. #22762
John D. Carter, La.S.B. #24334
The Pelican Building
2121 Airline Drive, Suite 200
Metairie, Louisiana 70001
Telephone: (504) 837-2500
Counsel for Defendant, Reliance Insurance
Company

## CERTIFICATE OF SERVICE

I certify to mailing a true and correct copy of the foregoing to all counsel of record by depositing a copy of the same in the U.S. mail on this 16th day of January, 2001, postage prepaid and addressed to all counsel of record.

-2-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE ESTATE OF JOSEPH M. | ) | |
| COSTELLO, III BY ASHTON HARDY | ) | |
| AS EXECUTOR, | ) | DOCKET NO. 00-349-M4 |
| | ) | |
| Plaintiff | ) | DIVISION / SECTION: J-4 |
| | ) | |
| vs. | ) | JUDGE: BARBIER |
| | ) | |
| RELIANCE INSURANCE COMPANY, | ) | MAGISTRATE: ROBY |
| | ) | |
| Defendant | ) | |

## STATEMENT OF UNCONTESTED MATERIAL FACTS

NOW COMES Defendant, Reliance Insurance Company, which submits that the following

facts are undisputed, and that upon the following undisputed facts that Reliance is entitled to a partial

summary judgment dismissing all extra-contractual claims arising in this matter, leaving only the

breach of contract action to remain for trial:

1. On December 21, 1998, property owned by the Plaintiff/insured was destroyed as a result

of (a) an intense electrical arc, (b) a latent defect in the property itself, or (c) a fire.

2. Reliance had in full force and effect on the said loss date, a liability policy covering the

insured premises against the risk of fire. Said policy is attached as an exhibit to the

-1-

contemporaneously filed memorandum in support, and there is no dispute as to the wording of the policy at issue.

3. During investigation of the claim, chemical analysis of soot removed from the damaged equipment at issue established that the loss was caused by a high intensity electrical arc, and not by a combustion or flame of much lower temperature.

4. On April 8, 1999, a detailed and extensive Examination Under Oath (EUO) was taken of the insured by counsel for Reliance. During this EUO, the witnesses produced by the insured agreed that electrical arcing was involved in the event at issue, and also agreed that the insured had been experiencing numerous difficulties with the equipment at issue in the months and weeks leading up to the loss date.

5. On June 25, 1999, Reliance provided a very detailed denial of claim letter to the insured. (A copy is attached to the memorandum.) The facts and circumstances set forth in that lengthy document are more than sufficient to establish that Reliance has a sufficient basis to resist the insured's claim for further benefits under the policy.

6. While the parties remain in disagreement on the question of coverage, and on the question of causation, it is irrefutable on the record at bar that there does in fact exist ample evidence to support Reliance's contention that the loss at issue is not a covered loss, such that Reliance is not in bad faith by requiring that this dispute be resolved through the Courts.

Respectfully submitted,

NIELSEN LAW FIRM


_Gerald J. Nielsen_

Gerald J. Nielsen, T.A., La.S.B. #17078
William R. DeJean, La.S.B. #22762
John D. Carter, La.S.B. #24334
The Pelican Building
2121 Airline Drive, Suite 200
Metairie, Louisiana 70001
Telephone: (504) 837-2500
Counsel for Defendant, Reliance Insurance
Company

## CERTIFICATE OF SERVICE

I certify to mailing a true and correct copy of the foregoing to all counsel of record by
depositing a copy of the same in the U.S. mail on this 16th day of January, 2001, postage prepaid and
addressed to all counsel of record.


_Gerald J. Nielsen_

-3-

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE ESTATE OF JOSEPH M. COSTELLO, III BY ASHTON HARDY AS EXECUTOR, | ) ) ) ) | DOCKET NO. 00-349-M4 |
| Plaintiff | ) ) | DIVISION / SECTION: J-4 |
| vs. | ) ) | JUDGE: BARBIER |
| RELIANCE INSURANCE COMPANY, | ) ) | MAGISTRATE: ROBY |
| Defendant | ) | |

## NOTICE OF HEARING

PLEASE TAKE NOTICE:

That the attached Motion will be brought for hearing before the Honorable Carl J. Barbier on the 28th day of February, 2001, at 9:30 a.m. at the United States District Courthouse located at New Orleans, Louisiana.

New Orleans, Louisiana, this _____ day of _____, 2001

_____

JUDGE

Respectfully submitted,

NIELSEN LAW FIRM


_Gerald J Nielsen_

Gerald J. Nielsen, T.A. La.S.B. #17078
William R. DeJean, La.S.B. #22762
John D. Carter, La.S.B. #24334
The Pelican Building
2121 Airline Drive, Suite 200
Metairie, Louisiana 70001
Telephone: (504) 837-2500
Counsel for Defendant, Reliance Insurance Company

## CERTIFICATE OF SERVICE

I certify to mailing a true and correct copy of the foregoing to all counsel of record by depositing a copy of the same in the U.S. mail on this 16th day of January, 2001, postage prepaid and addressed to all counsel of record.


_Gerald J Nielsen_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE ESTATE OF JOSEPH M. COSTELLO, III BY ASHTON HARDY AS EXECUTOR, | ) ) ) ) | DOCKET NO. 00-349-M4 |
| Plaintiff | ) ) | DIVISION / SECTION: J-4 |
| vs. | ) ) | JUDGE: BARBIER |
| RELIANCE INSURANCE COMPANY, | ) ) | MAGISTRATE: ROBY |
| Defendant | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY JUDGMENT

MAY IT PLEASE THE COURT:

The Defendant, Reliance Insurance Company (Reliance) respectfully submits this Memorandum in Support of its Motion for Partial Summary Judgment. Through the instant motion, Reliance seeks an Order of this Honorable Court dismissing the Plaintiff's various *extra-contractual* claims arising out of this property damage insurance contract dispute, leaving only the breach of contract action to remain for future proceedings. In this Memorandum, Reliance will explain why the claim of extra-contractual damages in this case is *wholly* inappropriate, and nothing beyond an obstacle to a final resolution of this dispute.

-1-

## PREAMBLE

There are essentially two claims before the Court. First, Plaintiff asserts a breach of the insurance contract, and thereby seeks additional funds under the policy/contract. Second, Plaintiff asserts that the decision by Reliance to not voluntarily pay those requested additional funds, as opposed to allowing the dispute to be resolved by this Honorable Court, is arbitrary and capricious and a violation of state law. Only the second claim is the subject of the instant motion.

Reliance will demonstrate herein that when the undisputed facts and circumstances of this proceeding are examined, the Court will determine that there is absolutely no dispute as to the following two facts:

(1) Before the decision to deny this insured's (Plaintiff's) claim was made by Reliance, Reliance was provided with abundant and competent factual information to support the conclusion that the damages at issue in Plaintiff's loss were caused by an electrical arc and/or a latent defect in the equipment at issue, as opposed to a fire. Stated differently, and regardless of whether one might conclude today that the cause of the loss was an electrical arc *or* latent defect *or* a fire, it is an undisputed material fact for the purposes of this motion that ample competent evidence was available to Reliance before the decision to deny the claim was made, supporting a non-covered causation of this event.

(2) Under the policy, while loss caused by fire is covered, loss caused by electrical arcs and/or latent defects in equipment is not. At the very least, it is irrefutable that a cogent and good faith argument can be presented that fire is covered, while electrical arcing and latent defect is not.

If, in the context of this motion, Reliance can demonstrate to this Honorable Court that it did indeed possess reliable information upon which to reach a conclusion that the damages at issue were

-2-

caused by electrical arcing and/or latent defect as opposed to a fire, and if Reliance can then establish in the context of this motion that at the very least, it has a competent argument that loss due to either electrical arcing or a latent defect is not covered (a position it believes is perfectly clear under the policy), then it submits that there is no genuine dispute of material fact with regard to the Plaintiff's *extra-contractual* claims, and that upon those undisputed facts, Reliance is entitled to summary judgment on those claims.

Reliance will demonstrate in this motion that it worked <u>very</u> diligently and at <u>great</u> expense to investigate the instant claim. It believes that once the Court understands the lengths to which Reliance went to determine the cause of the Plaintiff's loss, that the Court will view the efforts of Reliance as a model of how an insurance company should conduct itself in handling complex commercial loss adjustments. In this regard, and specifically *because* Reliance believes it conducted itself in a professionally appropriate and responsive manner, it contends that it should not labor in this lawsuit under the threat of an inappropriate bad faith claim.

In addition, Reliance contends that the inappropriate bad faith claim is an obstacle to the final resolution of this matter. Confining the issues increases the chances that this matter can be resolved through motions and/or through settlement. The addition of extra and amorphous issues causes the opposite result, mainly increased difficulties for the parties to reach an amicable resolution or, for the Court to make a ruling without unnecessary waste of time or expense. Accordingly, both for the purpose of vindicating the irrefutable fact that this claim was adjusted properly and with great diligence, and for the purpose of confining the issues in the hope of speeding this matter towards resolution, Reliance prays for dismissal of all claims at bar other than the breach of contract action itself.

-3-

## THE FACTS

That which follows is a chronology of events.  The Court is asked to note within the following chronology and the exhibits which are referenced, each party's contentions during the claims adjustment process as to whether the loss was caused due to electrical arcing, or due to fire.  Approximately two-thirds through the chronology, the Court will be asked to specifically notice that it became determined *during the claims adjustment process*, and even before denial of the claim, that the sciences of chemistry and physics **mandate** a finding that the damages at issue were caused by electrical arcing and not by combustion or fire.  After these facts are presented, the Court will then be shown the relevant policy provisions against which this causation dispute was judged by Reliance during the claims adjustment process.

### A.    The Chronology

December 21, 1998.  This is the date of loss.  No one disputes that on this date extensive damage occurred to the insured's radio transmitting equipment.  What is disputed, is <u>why</u> the damage occurred.  It is also undisputed that the  loss was promptly reported by the insured to the insuror.  It is also undisputed that the insuror responded promptly, and did promptly commence an investigation of the loss.  With regard to that investigation, Reliance submits the following events of note:

January 18, 1999.  Mr. Ashton Hardy, writing on behalf of the insured, wrote to Reliance asking that the claim be handled as expeditiously as possible.  (Ex. A)  Notably, Mr. Hardy's letter makes no mention of a fire <u>at all</u>.  *Id.*  Instead, the letter states the following as to the cause of loss:

> You have been informed of the loss of the station's main transmitter **due to an electrical "overload"** that occurred on December 21, 1998. (emphasis added) (Ex. A)

-4-

On January 25, 1999, two different experts with backgrounds in radio station electronics examined the radio station damage on behalf of Reliance. Attached as Exhibits B and C are the reports from those experts received by Reliance. Suffice it to say, that examination of these two reports will lead this Honorable Court to conclude without reservation that Reliance was facing a highly technical issue as to how and why the damage occurred. In other words, the claim at issue could not possibly be more different than your typical house-fire claim. Moreover, and as revealed by the reports of both experts, their opinion was that the cause of the loss was electrical arcing, and not a fire. *Id.* For instance, Mr. Sanderford's report concludes as follows:

> The damage to the dual contractor and the control cabinet was a result consistent with excessive current being drawn from the arcing. The contacts would have deteriorated and weakened over a period of time when the popping and repeated shut-downs occurred. The arcing at the contacts, with the amount of current flowing through the circuit, would easily have generated a momentary flash that would have caused the results as shown in figure 2 and 3.

> There was no actual fire, but rather a momentary high intensity flash, common to shorts in electrical circuits. A great deal of heat was generated momentarily, metal was melted and fused, insulation charred and melted. The heat and smoke damage was a result of the electrical problem. There was no fire or external source causing the electrical damage. In essence, the damage was already in progress before the evidence of heat or smoke manifested itself. (Ex. B, pp. 2-3)

On February 26, 1999, Reliance exercised its option under the policy to request an Examination Under Oath (EUO). (Ex. D) At the same time, Reliance tendered a check in the amount of $25,000.00 to the insured based upon a separate and additional coverage which the insured had taken out under the policy which was specifically for "electrical or magnetic injury." (Ex. D) As revealed by the policy, (Ex. E, p. 5) this is the policy limit for this separate coverage for electrical or magnetic injuries. The Court is asked to examine the attached letter of February 26, 1999, for it reveals the posture which Reliance was taking during its efforts to determine whether

-5-

this claim constituted a covered loss, or not.

On February 19, 1999, an expert for the insured provided the insured a report with regard to the cause of loss. (Ex. F) (That "expert" later turned out to be a salesman from a rival seller of transmitters.) That expert sought to opine that the damage was caused by a fire. However, on the transmittal letter pursuant to which the report was apparently sent, the expert twice asserted that the underlying cause was actually an electrical "arc." (Ex. G)

On April 8, 1999, an Examination Under Oath (EUO) was taken of the insured by counsel for Reliance. (Excerpts of the EUO are at Exhibit H) Counsel for the insured was present during the proceeding. It is extremely detailed, and the transcript is 337 pages long. The insured testified through three different persons. These were Lawrence H. Thom, the station manager/engineer who was responsible for maintenance of the equipment; Ronald A. Baker, who "manufactured" the equipment; and J. Fred Riley, a salesman from a competing manufacturer who wanted the insured to buy any new equipment from it.[1] Mr. Hardy, the insured's executor, also testified briefly as to certain points he decided needed clarification.

As an initial matter, none of the four men who testified about the fire for the insured could agree on how long the alleged fire had lasted. (The station is unmanned, and so no one was actually present during the event at issue.) Mr. Baker, the manufacturer of the equipment, testified, "I would say that the fire was probably underway 20 to 30 minutes." (EUO, p. 89) Mr. Thom, the station manager, testified, "That fire probably went on for about an hour." (EUO, p. 90) Mr. Hardy, the

---

[1] Throughout the EUO, Mr. Baker and Mr. Riley freely advanced their opinions that the loss at issue was caused by a "fire." However the Court is asked to notice that (a) neither man had any idea of what had caused what they erroneously believed was a fire; and (b) neither man has been designated as an expert for trial by the Plaintiff/insured. (The deadline for Plaintiff's designation of experts was December 29, 2000.)

executor, testified, "It had to be at least an hour." (EUO, p. 91) And Mr. Riley, the salesman/expert, testified as to the fire's alleged duration, "I would say in the neighborhood of thirty minutes and possibly an hour." (EUO, p. 219)

In contrast to these claims of a fire of approximately one hour duration, the first station employee to arrive at the station during the alleged fire, did not report the occurrence of a fire at all, but rather only smoke and stench. (EUO, pp. 94-95, 129) Also, WRNO admits, that despite its claim of a fire lasting such a long period of time, **there is absolutely no evidence of fire damage or soot damage to the ceiling <u>immediately</u> above the equipment in question**. (EUO, pp. 17-18) (This is impossible if the fire described by the insured's witnesses had indeed occurred.) Additionally, **the fire department was never called**, and hence no report from said department was ever obtained.

With regard to Mr. Riley and Mr. Baker, that being the two "experts" produced by the insured at the EUO to present the insured's version of what had caused the loss in question, the Court is asked to note the following which is based upon the text of the EUO itself:

J. FRED RILEY, J.D.

Mr. Riley is a non-practicing attorney who apparently works in marketing and sales for Continental Electronics. He was brought into this case by WRNO for the purpose of trying to obtain a new transmitter. (EUO, p. 195) According to Mr. Riley, the existing equipment was obviously damaged by a fire, and the <u>only</u> appropriate response is to buy a new Continental Electronics transmitter *of far higher quality* for $550,000.00. (EUO, pp. 219, 335) Mr. Riley specifically admitted that the transmitter that he desired to sell to WRNO (and which WRNO wanted bought by Reliance) for $550,000.00 is "not like kind and quality" to the equipment previously owned and

-7-

operated by WRNO.  (EUO, p. 202)

The problem with Mr. Riley (beyond the obvious interest in making a sale), is that he has absolutely no background as an expert regarding fires.  He admits that he has never testified in any proceeding as any kind of expert concerning fires.  (EUO, p. 222) He also admits that he has never been a causation expert in a case such as this in the past.  (EUO, p. 231) And, as to what would have actually caused the supposed fire he claims occurred, he admits, "I have no idea what it was." (EUO, p. 268)

One point which Mr. Riley did admit, is actually of significance in helping the parties try and resolve what occurred in this case.  In the EUO, Mr. Riley agreed that electrical arcing and fire are two "totally different" things:

Q:    [by Mr. Nielsen] Arc and fire, we're talking about two different things. Correct?

A:    [by Mr. Riley]  Oh, totally different.  (EUO, pp. 326-27)

<u>Why</u> arcs and fires are "totally different" was described by Mr. Riley as follows:

Q:    [by Mr. Nielsen] When you have an arc that is being talked about in their reports and your report, how much temperature are we talking about?

A:    [by Mr. Riley]  **Thousands** of degrees.

Q:    The flame that you are saying was involved in here, what kind of temperatures are involved there?

A:    **Hundreds** of degrees.  (emphasis added) (EUO, p. 220)

RONALD BAKER

Mr. Baker is the manufacturer and seller of the equipment which is the subject of the loss. He supports WRNO's contention that a fire caused this loss.  (EUO, p. 89)  However, Mr. Baker

-8-

testified that he hasn't built a transmitter like this one for fifteen years, (EUO, p. 50) and, that said prior transmitter suffered the exact same destructive loss that this transmitter has suffered. (EUO, pp. 102-104). Either, this is an incredible and amazing coincidence, or, this is clear evidence of a hidden or laden defect in the equipment which caused it to destroy itself.

Mr. Baker testified that his company is in bankruptcy "largely because of this circumstance here." (EUO, p. 50) Also, WRNO has never accepted the transmitter or even run it through acceptance testing, and, all of the insured's witnesses agreed that the equipment was incomplete and experiencing <u>several</u> electrical problems in the weeks leading up to the loss date. (EUO, pp. 36, 47, 51-54, 72-73, 80, 86, 163, 183) Again, this even more strongly evidences internal defect as the cause of the loss. Obviously, Mr. Baker would prefer a conclusion that a freak and unexplained fire (which was not caused by the same defect that caused his last transmitter to self destruct) was the cause of this occurrence. Finally, Mr. Baker respectfully cannot be given too much credence as an expert in fires, for even he testified quite readily that he would defer to an actual expert in that field of endeavor:

Q:      [by Mr. Nielsen] When you say "fire," you mean flame. Correct?

A:      [by Mr. Baker] I mean flames.

Q.       It is your belief that flame is moving through this cabinet because of what
         this air blower is doing?

A:      Yeah, absolutely.

Q:      But I take it you are not an expert in fire investigations or anything like that?

A:      No, I'm not.

Q:      So if some fire investigator came in and said, "no that doesn't work here," you would
         defer to him?

A:    Sure. (EUO, p. 170)

In short, each of the persons who testified on behalf of the insured at the EUO agreed that electrical arcing was involved in the occurrence at issue. (EUO, pp. 169, 209, 221, 239-40, 268 and 293) Each witness for the insured contended that the presence of electrical arcing was insignificant (despite their repeated admissions that they didn't know what had caused the fire) and insisted that a fire of unknown origin caused the damage at issue. However, not one of the gentlemen could provide any factual basis for their unsupported and extremely vague theories that an actual fire was present.

Subsequent to the EUO, and in response to Mr. Riley's rhetoric that the loss was *obviously* caused by a fire, (despite his admission that he had no expertise whatsoever in fire cause and origin issues) *Reliance hired yet another expert*, this time an expert with a specific background in fire cause and origin issues. Said expert, Mr. M. A. Stringer provided a report to Reliance on June 17, 1999 which concluded as follows:

> As can be seen in a study of the figures, the extensive damage is limited to the three (3) phase contactor in cabinet I. Examination of this contrator and its associated wiring showed its damage to be the result of excessive internal electrical currents flowing in all three phases. Examination of the transmitter failed to identify the specific cause of this contactor malfunction. This contactor's excessive internal electrical current caused the line side conductors to be severed by electrical arcing, resulting in the over heating of the contactor and its associated wiring. Examination of the area surrounding this contactor clearly showed that there was no resulting fire and the time duration for the contactor failure was limited to the time at which the line side conductors were severed. (Ex. I, pp. 2-3)

Still wishing to do more, Reliance also obtained yet another expert for the purpose of determining what it might cost to repair the equipment as opposed to replacing it as was *clearly* desired by the insured. (Only a small portion of the equipment was "fried"; the rest was merely

exposed to soot.) To this end, Reliance obtained the services of a company which specializes in the cleaning of electronic equipment following losses due to fire, smoke, flood etc. The company which was retained was Restoration Technologies, Inc. of Aurora, Illinois, and the individual of that company who became involved in this case as John L. Warner. By agreement with the insured, Mr. Warner did an on-site inspection of the involved equipment on May 13, 1999. During his inspection, Mr. Warner took five-wipe samples of the soot which was situated upon the equipment for the purpose of determining what chemical compounds were on the equipment, so that he could choose the correct solvent for cleaning.[2] The results of that Wipe Sample Analysis (WSA) were provided to Reliance on June 17, 1999, and then provided to the insured on the same date that they were received by undersigned counsel. The conclusion of that four-page and highly technical report removes all doubt over whether a fire was involved in the loss at issue:

> The wipe sample tests support the visual observations that the loss incident involved a localized electrical "hot spot" that produced elemental carbon particles from smoldering plastic particles and amounts of thermally decomposed fiber-enforced plastic wire insulation. A varying mixture of ash particles and extraneous nuisance deposits were found on various internal cabinet surfaces with the highest ash concentrations seen in the cabinet where the electrical "hot spot" occurred. **The total absence of fire-related combustion by-products from plastic insulation in the form of poly nuclear aromatics (PNA's) can be taken as evidence of a lack of an active oxidizing open flamed fire.** These wipe sample results are consistent with the reported on-sites observations. (emphasis added) (Ex. J)

In plain English, soot from fires has a different chemical composition than soot from electrical arcing. This is because of the vastly different temperatures involved. The soot taken from the transmitter cabinets at issue in this case revealed only soot produced by high temperature electrical arcing, and no soot indicative of a fire. *Id.*

---

[2] Reliance's caution in this regard was in direct response to Mr. Riley's expression of concern as to how the cleaning process would handled. (EUO, pp. 251-52, 289-90)

Critically, at no point did the insured ever contest these findings. Even to this day, the insured has not obtained any expert testimony to rebut this chemical evidence. Accordingly, and as a matter of chemistry and physics, Reliance submits that it is absolutely correct in concluding that the cause of the loss at issue was severe heat damage resulting from an intense electrical arc, as opposed to damage caused by heat of far lesser intensity emanating from combustion.[3]

Based upon all of the above-described information, the claim for additional benefits beyond the $35,000.00 already paid was denied on June 25, 1999. (Ex. K) The Court is asked to examine the very detailed denial of claim letter sent to the insured which sets forth all of the same facts which are being presented herein. *Id.* Also, the Court is asked to note that at the time of the claim denial, Reliance specifically agreed to reconsider its decision upon the presentment of additional and specific documentation which was available to the persons who had appeared at the EUO. *Id.* At no time did the insured provide the additional documentation.

**B.    The Policy at Issue**

In response to the claim presented by WRNO to Reliance pursuant to the Proof of Loss submitted January 29, 1999, Reliance has sent to WRNO two different payments under two different coverages of the policy. Both payments were for the full policy limits for the coverages at issue. First, the policy includes a separate coverage endorsement for electrical injury. Because all evidence indicates that an electrical arc caused the damage, Reliance promptly tendered the full coverage limit applicable to this risk, which totaled $25,000. Second, the policy also had a separate endorsement for loss of business income. The coverage limit applicable to this risk was $10,000. Again, that full

---

[3]This latest report also confirmed that the equipment could indeed be cleaned rather than replaced. Note, that the insured was never interested in repairs only, but it was interested in a far more expensive replacement.

limit has already been paid to WRNO.  Both payments were made early on, and during the claims adjustment process.

The issue thus becomes, are there any *additional* payments owed under the policy.  As the Court knows, no single policy of insurance covers every conceivable risk of loss.  The Reliance policy at issue here, like all insurance policies, excludes from coverage certain risks for which a premium has not been paid.  In this regard, paragraph 2a-c of the Exclusions section of WRNO's policy reads as follows:

2.    We will not pay for loss or damage caused by or resulting from any of the following:

a.    delay, loss of use or loss of market.

b.    smoke, vapor or gas from agricultural smudging or industrial operations.  But if loss or damage by a covered cause of loss results, we will pay for that resulting loss or damage.

c.    (1)    wear and tear;

(2)    rust, corrosion, fungus, decay, deterioration, **hidden or latent defect or any quality in property that causes it to damage or destroy itself;**

(3)    smog;

(4)    settling, cracking, shrinking or expansion of pavements, foundations, walls, floors, ceilings or roofs or swimming pools.

(5)    **electrical or magnetic injury**, disturbance or erasure of electronic recordings except by lightning; or

(6)    the following additional causes of loss to personal property:

-13-

> (a)  dampness   or   dryness   of
> atmosphere;
>
> (b)  changes  in  or  extremes  of
> temperature; or
>
> (c) marring or scratching.
>
> (7)  mechanical breakdown, including rupture or
> bursting caused by centrifugal force. But if
> mechanical breakdown results in elevator
> collision, we will pay for the loss or damage
> caused by that elevator collision. (emphasis
> added) (Ex. E)

Several of the exclusions noted above bar any additional payments. For instance, the policy excludes from coverage losses caused by or resulting from "electrical or magnetic energy." Note, as to this particular risk of loss, that WRNO obtained an additional and separate coverage for this risk with limits of $25,000. That coverage risk has already been paid upon. However, as this risk of loss is otherwise excluded except as to the amount already paid, no further payments may be made.

Second, the single most likely cause of the loss would properly be describable as a "hidden or latent defect or any quality in property that causes it to damage or destroy itself." While WRNO's witnesses were very quick to claim that the property was destroyed by a fire, they were overly circumspect as to what caused the fire to start in the first place. On this point, WRNO's representatives seem to wish to ignore the facts related to the prior destruction of the last unit of this type built by Mr. Baker, and the fact that WRNO was having many problems with the device at the time the loss occurred. Obviously, *but for* the fact that Mr. Baker has placed his company into bankruptcy "largely because of this circumstance here" (EUO, p. 50) WRNO would be proceeding

with a warranty claim against the manufacturer, as opposed to attempting to make a fire claim against the Reliance policy. It is unfortunate that Mr. Baker has chosen to go into bankruptcy, but this does shift the risk of loss to a covered loss under WRNO's policy with Reliance.[4]

## LAW AND ARGUMENT

As a foundational matter, it is the Plaintiff which has the burden of proof to establish its claims of extra-contractual liabilities. See *Hart v. Allstate Ins. Co.*, 437 So.2d 823 (La. 1983).[5] Defendant Reliance has absolutely no burdens of proof whatsoever in regards this motion. It need only point out to the Court that there has been sufficient time for discovery of this cause, and, that it believes Plaintiff to be without the ability to set forth a *prima facie* case on its claims. That is the purpose of this motion. It is a test of whether the Plaintiff can put forward ***competent summary judgment evidence*** in support of the bad faith claims at this time, and in advance of the trial on the merits.

Now, Reliance will set forth the legal standards against which any proof that Plaintiff does present must be judged:

**A.    Supplemental Relief Sought Pursuant to La.C.C.P. Article 1878 is <u>Not</u> *Necessary or Proper* in the Instant Matter**

Plaintiff seeks supplemental relief pursuant to Louisiana Code of Civil Procedure Article

---

[4]Again please note the insured's total lack of interest in any type of repairs. If the insured did not believe it owned problematic equipment, repairs would have been an option that they would have considered.

[5] See also, *Delahoussaye v. Madere*, 733 So.2d 679, 688 (La. App. 5th Cir. 1999); *Broussard v. Nat'l Union Fire Ins.*, 653 So.2d 816 (La. App. 3rd Cir. 1995); *Wiley v. Safeway Ins. Co.*, 745 So.l2d 636, 640 (La. App. 3rd Cir. 1999); *Rogers v. Ambassador Ins. Co.*, 452 So.2d 261, 264 (La. App. 5th Cir. 1984), *writ denied*, 457 So.2d 14 (La. 1984); *Sibley v. Insured Lloyds*, 442 So.2d 627, 632 (La. App. 1st Cir. 1983).

1878 which provides for:

> Further relief based upon a declaratory judgment or decree may be granted whenever necessary or proper. The application therefor shall be by petition to court having jurisdiction to grant the relief. If the application is considered sufficient, the court, on reasonable notice, shall require any adverse party whose rights have been adjudicated by the declaratory judgment or decree, to show cause why further relief should not be granted forthwith.

However, the Court may refuse to render a declaratory judgment, pursuant to Louisiana Code of Civil Procedure, Article 1876,[6] where "such judgment or decree, if rendered, would not terminate the uncertainty or controversy giving rise to the proceeding." *Morial v. Guste*, 365 So.2d 289 (La.App. 4th Cir. 1978), *writ denied*, 365 So.2d 1375 (La. 1978); *Liberto v. Rapides Parish Police Jury*, 667 So.2d 552, *rehearing denied*. A declaratory judgment in this matter will not "terminate the uncertainty or controversy", as there are disputed issues of fact *as to the contract claim* which preclude the granting of a declaratory judgment.

**B.    Dispute of Claim is <u>Not</u> *Arbitrary, Capricious, or Without Probable Cause,* as Alleged Pursuant to LSA-R.S. 22:658 and LSA-R.S. 22:1220**

Plaintiff alleges that Reliance should be punished for its denial of the claim pursuant to LSA-R.S. 22:658 and LSA-R.S. 22:1220. In both statutes, there is a specific requirement that penalties can be imposed only when the insurer has acted in bad faith, i.e., arbitrary, capricious or without probable cause in assessing the claimant's proof of loss. *Hanover Corporation of America v. State Farm Mutual Auto. Ins. Co.*, 67 F.3d 70, 73 (5th Cir. 1995); *Real Asset Management, Inc. v. Lloyd's*

---

[6]Ordinarily, summary trial of controversies over property and property rights is the exception in administering justice. *New Hampshire Fire Insurance Company v. Scanlon*, 362 U.S. 404, 406, 80 S.Ct. 843, 845, 4 L.Ed.2d 826 (1960); *Weems v. McCloud*, 619 F.2d 1081, 1095 n.34 (5th Cir. 1980). The exception to this rule is when there is express statutory authority. *Id.* Louisiana Code of Civil Procedure Articles 1871-1883 provide such authority.

*of London*, 61 F.3d 1223, 1225-28 (5th Cir. 1995).[7]    Under Louisiana jurisprudence both statutes are penal in nature and hence must be strictly construed. *Id.*

The Louisiana Supreme Court has recognized that the prohibitions contained in the Sections 658(A)(1) and 1220(B)(5) are virtually identical, i.e., the failure to timely pay a claim after receiving satisfactory proof of loss when the failure to pay is arbitrary, capricious or without probable cause. *Smith v. Audubon Ins. Co.*, 679 So.2d 372 (La. 1997); see *Calogero v. Safeco Ins. Co. of Louisiana*, 753 So.2d 100 (La. 1/12/2000), and *Theriot v. Midland Risk Ins. Co.*, 694 So.2d 184, 192, n. 14 (La. 1997). The primary difference between the two statutes is that under Section 658(A)(1) the insurer must pay the claim within thirty (30) days of receiving satisfactory proof of loss, rather than the longer sixty (60) day period allowed under Section 1220(B)(5). In the present matter, Reliance promptly responded to the Plaintiff's notification of the potential claim, and Reliance sent notification of dispute of said claim within the thirty (30) day time period. Hence the issue in this matter is not whether the insurer responded within thirty (30) days or sixty (60) days, but whether the insurer was arbitrary, capricious or without probable cause in disputing the alleged claim.

The Louisiana Supreme Court has defined the phrase "arbitrary, capricious, or without probable cause," as contemplated by Section 658, as synonymous with "vexatious". *Louisiana Maintenance Services, Inc. v. Certain Underwriters at Lloyd's*, 616 So.2d 1250, 1253 (La. 1993). The Court further defined "vexatious refusal to pay" as "unjustified, without reasonable or probable cause or excuse." *Id.*, citing Couch on Insurance, 2d. § 58:70. Although premature at this stage of the instant case, penalties and attorney's fees are not to be assessed merely because the insurer is cast

---

[7]For State court cases see *Denton v. Reed*, 739 So.2d 217 (La. App. 5th Cir. 1999); *Spear v. Tran*, 682 So.2d 267 (La. App. 4th Cir. 1996); *Perkins v. Guaranty National Ins. Co.*, 667 So.2d 559, (La. App. 3rd Cir. 1995), *writ denied*, 673 So.2d 1033 (La. 1996).

in judgment under the policy. *Morey v. Western American Specialized Transportation Services, Inc.*, 968 F.2d 494, 499 (5th Cir. 1992); *Chevlier v. Reliance Ins. Co. of Illinois*, 953 F.2d 877, 883 (5th Cir. 1992); *Saavedra v. Murphy Oil, U.S.A., Inc.*, 930 F.2d 1104, 1111 (5th Cir. 1991); *Headrick v. Pennsylvania Millers Ins. Assoc.*, 245 So.l2d 324, 326 (La. 1971).

The determination of whether the insurer acted in an arbitrary and capricious manner, under either statute, turns on the facts and circumstances of each case. *Smith v. Audubon Ins. Co.*, 679 So.2d 372, 377 (La. 1997). As will be more fully discussed below, the facts in the present matter reveal that there are alternative theories as to the causation of the damages. If "fire" ultimately is found to be the cause of the damages, then Reliance must tender payment under that clause of the policy. However, if "electrical injury" and/or "latent defect" is found to be the cause of the damages, then coverage under the fire clause will be excluded. Further, Reliance in good faith has already tendered the full policy limit for electrical injury to the equipment.

In addition, whether a refusal to pay a claim is in bad faith hinges on the facts known to the insurer at the time of the refusal to pay the claim. *Wells v. Houston*, 657 So.2d 474, 477 (La.App. 3rd Cir. 1995), *writ denied*, 661 So.2d 500 (La. 1995). At the time of the dispute of coverage Reliance had conflicting expert reports that the causation of the damages, i.e., "fire" or "electrical injury". In addition, the facts revealed during the EUO clearly indicate the occurrence was caused by a "hidden or latent defect or any quality in property that causes it to damage or destroy itself." (Ex. E, Art. 2c.2) Accordingly, the facts amply support the position that Reliance was in good faith in disputing the claim for additional benefits under the "fire" clause.

In *Gipson v. Yosemite Ins. Co.*, 494 So.2d 1290 (La.App. 2nd Cir. 1986), plaintiff sued to recover damage to his vehicle that resulted from a "fire". The insurer denied coverage based on a

policy provision that precluded coverage for damage due to electrical breakdown or failure.  The insurer based its denial on a dealership service manager's report that he could not determine whether the fire started first and burned a wire, or, if a wire shorted and started the fire.  After trial, the court rendered judgment in favor of the insurer.  On appeal, the appellate court reversed the underlying damage issue regârding coverage, however it upheld the trial court's decision not to award fees and penalties because there was a serious factual questions as to whether the fire preceded the short, or, whether a short caused the fire.  *Id.*   In the present matter, viewing this matter in the light most favorable to the insured, there is a serious factual question, based upon the conflicting expert reports, whether a fire caused the damage to the transmitter site, or, whether the damage was caused by electrical arcing.  Therefore, as in *Gipson*, fees and penalties are inappropriate in the current case as a matter of law.

Importantly, because of the penal nature of both Sections 658 and 1220, the statutes should not be invoked, and the plaintiff is not entitled to such statutory penalties, when the insurer has a reasonable basis for denying coverage. *Hanover Corporation*, 67 F.3d at 73; *Hart*, 437 So.2d at 827; *Headrick*, 245 So.2d at 326; *Delahoussaye*, 733 So.2d at 688.[8]  In the present matter, Reliance has a reasonable basis for denying coverage under the fire clause of the policy.  It is reasonable enough to rely on an expert's opinion as to the causation of the damages, however Reliance sought out and obtained additional expert corroboration of causation.  Reliance took several extra steps *prior to* denying coverage.  Therefore, Reliance has acted reasonably under the circumstances of this case

---

[8]See also, *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So.2d 746, 751 (La.App. 2nd Cir. 1999); *Holt v. Aetna Cas. & Sur. Co.*, 680 So.2d 117 (La.App. 2nd Cir. 1996), *writ denied*, 684 So.2d 938 (La. 1996); *Gipson v. Yosemite Ins. Co.*, 438 So.2d 599, 602 (La.App. 2nd Cir. 1983), *writ denied*, 442 So.2d 458 (La. 1983).

in denying coverage under the fire clause of the insurance policy.

Further, when an insurer has doubts about coverage, the insurer has the right to litigate such questionable claims without being subjected to damages and penalties. *Calogero v. Safeco Ins. Co. of Louisiana*, 753 So.2d 100 (La. 1/12/2000); *Darby v. Safeco Ins. Co. of America*, 545 So.2d 1022 (La. 1989); *Delahoussaye*, 733 So.2d at 688. Because of the instant facts and circumstances Reliance should be not be held under the cloud of potential penalties and should be free to fairly and justly litigate this questionable claim.

Louisiana jurisprudence has repeatedly held that an insurer's refusal to pay is not arbitrary, capricious, or without probable cause where a reasonable disagreement and/or serious dispute regarding the plaintiff's right to recovery are raised. *McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1092 (La. 1985); *Wiley*, 745 So.2d at 640; *Block*, 742 So.2d at 751; *Delahoussaye*, 733 So.2d at 688.[9] Again, due to the conflicting expert reports as to the causation of the damages there is a reasonable disagreement and serious dispute regarding the Plaintiff's right to recover under the "fire" clause of the insurance policy. A serious dispute as to the nature of the loss will preclude a finding of bad faith. *Reed v. United States Fidelity & Guaranty, Co.*, 302 So.2d 354 (La.App. 3rd Cir. 1974). This is especially true where there is a reasonable and legitimate question as to the extent and causation of a claim. *McClain*, 438 So.2d at 602; *Fontana v. Louisiana Sheriff's Automobile Risk*

---

[9]See also, *Malony v. USAA Prop. and Cas. Ins. Co.*, 708 So.2d 1220, 1225 (La. App. 4th Cir. 1998); *B. Bennett Manufacturing Co. Inc. v. South Carolina Ins. Co.*, 692 So.2d 1258 (La. App. 5th Cir. 1997); *Patin v. Imperial Lloyds Ins. Co.*, 670 So.2d 238, 244 (La. App. 3rd Cir. 1996); *Thibodeaux v. USAA Cas. Ins. Co.*, 647 So.2d 351 (La. App. 1st Cir. 1994); *Spivey v. Super Valu*, 575 So.2d 876 (La. App. 2nd Cir. 1991); *Gardiner v. Old Hickory Cas. Ins. Co.*, 529 So.2d 1324 (La. App. 5th Cir. 1988); *Gipson*, 494 So.2d at 1292; *Shields v. Pennsylvania General Ins. Co.*, 488 So.2d 1252 (La. App. 4th Cir. 1986); *Cole v. State Farm Mutual Auto. Ins. Co.*, 427 So.2d 522 (La. App. 3rd Cir. 1983), *writ denied*, 433 So.2d 710 (La. 1983); *Sibley*, 442 So.2d at 632; *McClain*, 438 So.2d at 602.

*Program*, 697 So.2d 1037, 1040 (La.App. 1st Cir. 1997); *Patin*, 670 So.2d at 244.  Thus, Reliance's

actions have not been arbitrary, capricious, or without probable cause.

**C.     Defendant Did <u>Not</u> Breach *Duty of Good Faith and Fair Dealing*, and Penalties Sought Pursuant to LSA-R.S. 22:1220 are Inapplicable**

LSA-R.S. 22:1220 places an affirmative duty upon the insurer to deal fairly and in good faith

with the insured and/or claimant.  It reads in pertinent part:

> A.     An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing.  The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both.  Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

> B.     Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

> (1)    Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

> (2)    Failing to a settlement within thirty days after an agreement has been reduced to writing.

> (3)    Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.

> (4)     Misleading claimant as to the applicable prescriptive period.

> (5)    Failing to pay the amount of any claim due any person insured b y the contract within sixty days after the receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

As discussed above, Reliance's actions were not arbitrary, capricious, or without probable cause as

required by Section 1220(B)(5).  Further, the facts will show that none of the other four subsections

(1) – (4) are applicable in the instant matter.

At no time has Reliance misrepresented pertinent facts or insurance policy provisions relating to any coverage to the Estate. In contrast, Reliance has gone to great lengths to discuss and explain its reasons for disputing coverage and denying coverage under the "fire" clause of the policy. Reliance has made available expert reports to the insured regarding causation of the damages. These reports explicitly set forth the pertinent facts concerning Reliance's position for dispute. In addition, Reliance has not misrepresented any of the insurance policy provisions relating to coverage. There has been extensive dialog between Reliance and the Plaintiff regarding the insurer's position that the instant claim falls under the "electrical injury" clause as opposed to the "fire" clause. The parties have not disputed the provisions of the policy. Therefore, subsection (1) of this Section is inapplicable in this regard.

Due to the dispute of factual issues regarding the cause of damage, no agreement has been reduced to writing between the parties. Because there has been no agreement reduced to writing, there has been no failure to pay a settlement within thirty days after such reduction, as provided under subsection (2). Accordingly, this subsection is likewise inapplicable.

Further, there has been no allegations, or even mere inferences, that the insurer is denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered in any manner. Subsection (3). Thus, this subsection is also inapplicable.

At no time has Reliance misled the Plaintiff as to the applicable prescriptive period. This is a non-issue in this matter. Therefore, subsection (4) of Section 1220 is inapplicable.

Finally, as discussed above in conjunction with claims pursuant to the parallel statute LSA-R.S. 22:658, dispute of this insurance coverage claim has not been arbitrary, capricious, or without probable cause, and subsection (5) of Section 1220(B) is likewise inapplicable. Therefore, any

-22-

assertions that Reliance has breached its duty of good faith and fair dealing as required under LSA-R.S. 22:1220 are without basis and should be dismissed at Plaintiff's cost.

## CONCLUSION

In conclusion, there is a genuine and legitimate dispute as to the issues of fact regarding the Plaintiff's breach of contract claim. Said claim hinges on whether the cause of the damage was a "fire", or, whether it was an "electrical arcing," or a "latent defect." Therefore, and given the undeniable existence of a legitimate and genuine dispute of coverage, it cannot be said that Reliance breached its duty of good faith and fair dealing with the Plaintiff by resisting payment. Furthermore, Reliance tendered full payment of policy limits under the electrical injury and loss of income clauses of the policy. Reliance's actions in this matter have been neither arbitrary, capricious, or without probable cause, and accordingly these claims should be dismissed at Plaintiff's cost.

Respectfully submitted,

NIELSEN LAW FIRM

Gerald J. Nielsen, T.A. La.S.B. #17078
William R. DeJean, La.S.B. #22762
John D. Carter, La.S.B. #24334
The Pelican Building
2121 Airline Drive, Suite 200
Metairie, Louisiana 70001
Telephone: (504) 837-2500
Counsel for Defendant, Reliance Insurance
Company

-23-

## **CERTIFICATE OF SERVICE**

I certify to mailing a true and correct copy of the foregoing to all counsel of record by depositing a copy of the same in the U.S. mail on this 16th day of January, 2001, postage prepaid and addressed to all counsel of record.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| THE ESTATE OF JOSEPH M. COSTELLO, III BY ASHTON HARDY AS EXECUTOR | ) ) ) | DOCKET NO. 00-349-M4 |
| Plaintiff, | ) ) ) | DIVISION / SECTION: J-4 |
| vs. | ) ) | JUDGE: BARBIER |
| RELIANCE INSURANCE COMPANY, | ) ) | MAGISTRATE: ROBY |
| Defendant. | ) ) | |

## **A F F I D A V I T**

STATE OF NORTH CAROLINA

COUNTY OF ~~new~~ Hanouer

BEFORE ME, the undersigned notary public, duly qualified and commissioned in and for this County and State, personally came and appeared:

### **ROBERT W. AUSTIN**

who, after being duly sworn by me did depose and state that:

1)    I, Robert W. Austin, am the National General Adjuster for Reliance Insurance Company;

2)    I, Robert W. Austin, hereby certify that the documents attached to the Motion for Partial Summary Judgment are true and correct copies of those documents maintained by Reliance Insurance Company, Defendant herein.

_____
ROBERT W. AUSTIN
GENERAL NATIONAL ADJUSTER

Thus Sworn to and Signed

Before me, this ___9th___ day of

___January___, ~~2000~~ 2001

_____
NOTARY PUBLIC

<u>My Commission Expires</u>
<u>7/8/2005</u>



-2-

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**